THOMAS H. BRAMLEY v. HENRY A. WILDS et al.

OFFICIAL BONDS.  *Liability of surety.  Secret conditions.*  Sureties on the
official bonds of W. as clerk and master, after due notice moved to be
discharged.  W. procured P. to sign his name as a substitute surety,
on the condition that others named would join.  P. acknowledged
the substitute bond before the chancellor, telling him at the time that
others would sign, but not that his signature was void unless they did.
The others did not sign; the bond was approved, the former sureties
released, and W. remained in office.  *Held,* that P. was liable as
surety for all defalcations of W. after the date of his acknowledgment.

FROM GREENE.

Appeal from the Chancery Court at Greeneville.
N. HACKER, sitting as Chancellor by interchange.

A. B. WILSON for complainant.

ROBINSON & MALONEY, A. H. PETTIBONE and A.
N. SHOWN for respondents.

MCFARLAND, J., delivered the opinion of the court.

The object of this bill is to recover of H. A.
Wilds, former clerk and master of the chancery court
at Greeneville, and his sureties on his official bonds,
certain sums of money received by said Wilds under
the orders and decrees in a former cause and after-
wards decreed to be paid to complainant.

Wilds was appointed clerk and master on the 19th of November, 1870, and at that time executed and delivered the several bonds required by law, with a number of sureties, which bonds were duly acknowledged and approved and entered of record, and Wilds inducted into office.

Subsequently two of the sureties, Elbert S. Ripley and Felix A. Reeve, gave Wilds notice to give new bonds in accordance with the provisions of the Code, sec. 785 *et seq.*, so as to release them. In compliance with this notice, the record of the court shows that on the 13th of November, 1874, Wilds executed three additional bonds in substantial accord with the statutory bonds, with D. T. Patterson, W. D. Williams and Thomas Weems as sureties, which were acknowledged before the chancellor in open court by the obligors, approved by the chancellor, and entered of record, and Ripley and Reeve declared discharged.

Wilds continued in office under these several bonds until the expiration of his term, November, 1876.

The money for which a recovery is now sought was paid to Wilds under orders and decrees pronounced in the case of Thomas H. Bramley (the present complainant) *v.* M. F. Miller and others, the date of the payments being as follows, to-wit: July 14th, 1874, $400; December 8th, 1874, $220; and January 15th, 1875, $200. Of these sums Wilds subsequently accounted for $100, but failed to pay over the remainder, either to his successor in office or to complainant, who by the final decree in that cause was declared entitled to the fund.

D. T. Patterson, one of the surties on the last named set of bonds contests his liability upon several grounds, but principally upon the ground that the bonds were executed and delivered by him with an agreement at the time that he was not to be bound thereon until a number of other sureties also became bound, which condition not being complied with, it is insisted on his behalf that no liability ever attached to him. This defense is set up by answer and special pleas, and the testimony of Judge Patterson, and of the presiding chancellor Smith, and also Wilds and Williams, was taken in relation to the facts transpiring upon the execution of said bonds. Conceding for the argument that the official act of the chancellor, showing the execution and acknowledgment of these bonds in open court, and the acceptance and approval thereof may be contradicted by parol proof showing the delivery of the bonds as escrows, only to take effect upon the conditions stated, still we think the averments of Judge Patterson's answer and plea, and the statements of his deposition fail in any aspect to sustain the defense. If the official act of the chancellor can be avoided at all, it must be upon proof sufficient to set aside the judgment of a court of record for fraud: See *Amis* v. *Marks*, 3 Lea, 568; *Buford* v. *Cox*, *Ibid*, 518. Judge Patterson's statement in his deposition—which is substantially the same as his answer—is in substance, that Wilds applied to him to become his surety, telling him at the time that Reese, one of his sureties, had given him notice to give a new bond. Wilds told him he expected to give new

bonds, with *twenty good* men in the place of Reese—
he named over the men he proposed to give, many
of whom witness knew to be good and solvent men.
Witness gives the names of some of the proposed · sure-
ties, but the others he had forgotten, but thinks there
were at least twenty solvent men named.   He then
agreed with Wilds to become his surety on the bonds
upon the condition that the persons named should also
become sureties, and he would not have agreed to go
on the bonds on any other conditions.   He then asked
Wilds if his other sureties were in town and he said
he supposed not, but they would be in that day or
the next.   Witness told him that he was compelled
to return home and would not be in town again dur-
ing the term, but if the chancellor would take his
acknowledgment that morning he would go on the
bonds.   Witness then went into the court-house and
saw chancellor Smith on the bench, and told him he
had agreed to become one of Wilds' sureties; that
there was a number of others to go on the bonds,
but Mr. Wilds had told him they were not in town,
but would be on that day or the next; he told the
judge that he was in a hurry to go home, and asked
him as a favor to take his acknowledgment.   The
chancellor replied he would do so, and take the ac-
knowledgment of the others as they came in.   Williams
and Weems were then in the court-house, and they
with witness executed and acknowledged the bonds—
the chancellor at the time saying to Wilds, " as your
other sureties arrive, bring them in and I will take
their acknowledgments."   Wilds replied in substance

that he would do so—witness then immediately left. He says in substance elsewhere, that he left with the understanding that he was only to be bound upon condition that the other persons also became sureties; but he gives the actual transaction in the presence of the chancellor and what was then said and done, in substance as above. The chancellor's version of the transaction is, that he had previously been informed by Wilds that he proposed to give on the new bonds, as sureties (in the place of Ripley and Reeve) Patterson, Williams and Weems, and he, the chancellor, had agreed to take them; and when Patterson spoke of others signing ' the bonds, he supposed he had reference to Williams and Weems. About the time Patterson was executing the bonds, the chancellor discovered Williams in the court room and called him up and he also executed them, and before they were done, Weems also came in, and the bonds were executed and acknowledged by them. The chancellor not understanding that any other sureties were to sign them, and none others being offered, accepted them in that form. While Judge Patterson does prove distinctly that the conditions upon which he was to become surety on the bonds were agreed upon between himself and Wilds before they went into the court room, yet he does not prove that these conditions were stated in the presence of, or assented to by the chancellor. He only says that he told the chancellor that other sureties were to go on the bonds, and that the chancellor assented to this, but he does not say that the bonds were delivered by him and accepted upon this

Bramley v- Wilds.

condition—the names or number of the other sureties were not mentioned in the chancellor's presence.

Whatever may have been Judge Patterson's understanding of the matter, it is clear from his own statements that he executed and acknowledged the bonds in such manner and in such terms as to justify the chancellor, if he chose to do so, in accepting and approving them unconditionally, and he having done so, it is clear the liability attached.

Besides, this enabled Wilds to continue in office upon the faith of these bonds, and he and his sureties are estopped to deny their validity: Code, sec. 774.

Again, the fact that Wilds did not disclose to Patterson that Ripley had also given notice and was being released by the new bonds, can be of no avail. The fact could have been ascertained upon proper enquiry, and besides, the law would charge the new sureties with notice. There is no ground upon which the defendant Patterson can be relieved from the liability.

The question, then, is, are Ripley and Reeve relieved from liability for the breach of their bonds accruing subsequent to the approval of the new bonds? They pursued substantially the provisions of the Code, sec. 785, *et seq.* The new bonds were accepted and approved by the chancellor, and the express provisions of sec. 790 of the Code is, that upon the execution and approval of the additional bonds, the applicant sureties are exonerated from all liability for breaches of their bonds subsequently accruing.

---

Bramley *v.* Wilds.

---

That this does not affect the liability of the other sureties on the original bonds, either for previous or subsequent breaches, is also expressly provided by sec. 792.

It results that all the sureties on the original bonds' are liable for breaches accruing previous to the approval of the new bonds, and that all of said sureties except Reeve and Ripley are liable jointly with the sureties on the new bonds for breaches subsequently accruing. This was the holding of the circuit judge, who heard in the cause as chancellor. And upon this theory Reeve and Ripley were held liable jointly with the other sureties on the original bonds for $400 received by Wilds on the 14th of July, 1874, the court being of opinion that the default as to this sum had accrued previous to the approval of the new bonds on the 13th of November, 1874. This conclusion is sustained by the fact that in his official report of funds on hands made on the 11th of November, 1874, in accordance with the act of the 17th of December, 1869, Wilds gave no account of this money, although he had received it on the 14th of July previous. Not having been paid out or loaned, it should have been in his hands; and that it was not then in his hands, is sufficient evidence that he had converted it to his own use. The decree is not otherwise complained of as to the amounts.

Some technical questions are made in the record; and first, as to the refusal of the court below to continue the cause upon the affidavit of the defendant Patterson, but the affidavit only made a case for con-

Bramley *v.* Wilds.

tinuance in the discretion of the judge, and it does not appear that there was any abuse of discretion or injustice done by the refusal.

Objections were taken to the reading from the records of the court the copies of the several bonds in question, with the approval of the chancellor as therein entered, counsel insisting that the original bonds should be produced, or certified copies from the office of the Secretary of State, where the originals are required to be filed by sec. 331 of the Code. We find no special provision as to whether the original or a copy shall be produced when the bonds are desired, and if a copy, whether the copy on the record or from the office of the Secretary of State shall be the better evidence; but in this case the execution of the bonds and their terms and conditions are all admitted, except the special matters set up in the answer and plea of Judge Patterson, and their production was not essential.

Upon the whole, we find no error, and the decree will be affirmed with costs.